UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
In re:                                         Chapter 7

SYRRIA ADOMAH,                                 Case No. 05-16994 (ALG)

                    Debtor.

-------------------------------------------------------------x

## MEMORANDUM OF OPINION

APPEARANCES:

LAW OFFICES OF WILLIAM CAFARO
Attorneys for Debtor and Movant
        By: William Cafaro
37-31 76th Street
3rd Floor
Jackson Heights, NY 11372

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
Attorneys for Bank of America, Respondent
        By: Daniel S. Alter
            David L. Tillem
            Greg A. Friedman
3 Gannett Drive
White Plains, New York 10604

**ALLAN L. GROPPER**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court is a motion by the Chapter 7 debtor, Syrria Adomah (the

"Debtor"), for an order imposing damages on Bank of America for an alleged violation of

the automatic stay of § 362 of the Bankruptcy Code, 11 U.S.C. § 362.  Bank of America

defends on the grounds that (i) the Debtor does not have standing to bring this motion;

(ii) even if the Debtor did have standing, the Court cannot hold Bank of America liable

for violating the automatic stay because the Bank, as a passive garnishee in receipt of a

1

restraining notice, was not authorized to release the restraint under applicable State law; and (iii) the Debtor's motion is moot because the funds were released to the Debtor on September 22, 2005. The motion is disposed of as follows.

## FACTS

Mitsubishi Motors Credit of America (the "Judgment Creditor") entered a judgment against the Debtor for $8,927.63. On August 9, 2005, it served a restraining notice (the "Restraining Notice") on Bank of America. The Restraining Notice operated as a mandatory injunction under New York law and required Bank of America to restrain funds in the Debtor's checking and savings accounts (the "Accounts") in an amount equal to twice the judgment. N.Y. CPLR 5222(b). Disobedience of a restraining notice is punishable as a contempt of court and can cause a restrained party to be liable for damages. *Id*. At the time of the restraint, the Debtor's Accounts contained approximately $53. It appears that on or about August 18, 2005, approximately $1,100 (presumably a paycheck) was deposited directly into the Debtor's checking account and became subject to the Restraining Notice.

On August 26, 2005 (the "Petition Date"), the Debtor filed her Chapter 7 voluntary petition along with her Schedules and Statement of Financial Affairs. The Debtor listed a balance of $31.06 in her savings account and $21.80 in her checking account on Schedule B.[1] The Debtor claimed the funds in the Accounts as exempt property on Schedule C.

---

[1] The record does not indicate why the $1,100, which was deposited directly into the Debtor's checking account pre-petition, was not listed on the Debtor's Schedule B along with the $21.80. It is assumed that the $1,100 was in the Account on the Petition Date and on the date Bank of America lifted the restraint. (See Aff. of Kathleen A. Arcuri in Opp'n to Debtor's Mot. for Contempt for Violation of the Automatic Stay, at 3.)

2

On August 29, 2005, the Debtor started the process of attempting to free her Accounts from the restraint. On that date, Debtor's counsel served a Notice of Automatic Stay on Bank of America by ordinary mail, identifying the Southern District bankruptcy case number and date of filing. On September 2, 2005, Debtor's counsel also faxed the Notice of Automatic Stay and a copy of the filing receipt to Bank of America's legal order processing department. The Debtor personally took the Notice of Automatic Stay and the filing receipt to her local branch office, where she was advised that only the Judgment Creditor's attorney could lift the restraint and that the following would be required: (i) the Debtor could contact the Judgment Creditor's attorney and bring to the Bank a notarized statement signed by the attorney stating that the Debtor had settled with the Judgment Creditor or (ii) Debtor could obtain the Judgment Creditor's agreement to lift the restraint on the account. On September 16, 2005, Debtor's counsel called Bank of America and asked to speak to an individual in the legal department to inquire about the Bank's policy. Bank of America advised Debtor's counsel that no individual was specifically assigned to such matters and that he could not be connected with anyone in the law department. Upon being transferred to the particular branch involved, Debtor's counsel spoke with an employee or officer, Jessica Vasquez, who advised Debtor's counsel again of the Bank's policy with respect to lifting the restraint.

The Debtor alleges that as a result of the restraint, in the three weeks following the filing of the petition, the Debtor (i) was unable to pay her September post-petition rent; (ii) was advised by her landlord that eviction proceedings would be commenced if the rent were not paid; (iii) incurred a $25 late fee in regard to her late payment of the rent; (iv) was given notice that her telephone services would be terminated if the bill were

3

not paid; (v) incurred the payment of an additional deposit to the telephone company to restore service because she was unable to pay the telephone bill on a timely basis; (vi) had no money for food or transportation; and (vii) was required to ask relatives for charity.

On September 16, 2005, Bank of America received a letter from counsel to the Judgment Creditor authorizing Bank of America to release the restraint on the Accounts. The record does not show who requested that letter, but the Bank does not claim that it ever contacted the Judgment Creditor or its counsel with respect to the restraint. After processing the letter from the Judgment Creditor's attorney, the Bank released the restraint on the Accounts on September 22, 2005. In the meantime, on or about September 20, 2005, the Debtor filed the present motion. At no time was Bank of America a creditor of the Debtor, and it has not claimed any setoff rights.

## DISCUSSION

**I. Standing**

The Debtor claims that Bank of America violated the automatic stay by enforcing the Restraining Notice and freezing the Debtor's Accounts and should be held in contempt and liable for damages.[2] Bank of America's first defense is that the Debtor has

---

[2] The Debtor relies on 11 U.S.C. §§ 362(a)(1), (2) and (3), which provide that the filing of a petition in bankruptcy operates as a stay of
> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title; (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate.

To the extent a bank account is considered a debt owed by the bank to the depositor, *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 21 (1995), § 542 of the Bankruptcy Code provides for turnover of the property to the trustee.

4

no standing to bring this cause of action because at the time the property was restrained, it was property of the estate, the Chapter 7 trustee had not abandoned it, and the Debtor has no claim for damages as a consequence of the restraint.

This defense rests on the premise that upon the filing of a Chapter 7 petition, a debtor is automatically "divested of virtually all property interests held as of the commencement of the case and, in turn, these interests immediately vest in the estate." *Calvin v. Wells Fargo Bank, N.A. (In re Calvin)*, 329 B.R. 589, 602 (Bankr. S.D. Tex. 2005) (citations omitted); *In re Pimental*, 142 B.R. 26, 28 (Bankr. D.R.I. 1992); *Commercial Credit Bus. Loans, Inc. v. Northbrook Lumber Co.*, 22 B.R. 992 (N.D. Ill. 1982). Divestiture means that a debtor loses any title to and may not use the estate's assets for any purpose. *Calvin*, 329 B.R. at 602; *In re Laux*, 181 B.R. 60, 61 (Bankr. S.D. Ill. 1995). Title does not "revest in the debtor until the property is either properly claimed and allowed as exempt, or abandoned by the trustee." *Calvin*, 329 B.R. at 602 (citations omitted). In this case, the Chapter 7 trustee did not give notice of his intent to abandon the property until October 25, 2005, and with no objections filed, the abandonment became effective on November 14, 2005.

There is a split of authority as to the effect of divestiture on a Chapter 7 debtor's standing to bring a cause of action to hold a bank in contempt for violation of the automatic stay during the period of divestiture. Some cases have held, in the precise circumstances at bar, that a Chapter 7 debtor has standing to assert claims against a bank based on its denial of access to funds that the debtor claimed as exempt. *Jimenez v. Wells Fargo Bank, N.A. (In re Jimenez)*, 335 B.R. 450, 455-56 (D.N.M. 2005); see also *In re Moreira*, 173 B.R. 965, 973 (Bankr. D. Mass. 1994) (exemption claim was enough to

5

confer standing to challenge setoff). Other courts confronting the same facts have denied standing. See *Calvin*, 329 B.R. at 601; *Price v. Gaslowitz*, 173 B.R. 434, 440-43 (Bankr. N.D. Ga. 1994). No cases have been found on point in the Second Circuit. Nevertheless, the law in this Circuit is clear that only a trustee has standing to prosecute causes of action on behalf of the bankruptcy estate and that if the trustee unjustifiably refuses to bring an action, the debtor must obtain leave of court to sue before prosecuting a claim. *Unsecured Creditors Comm. of Debtor STN Enters., Inc. v. Noyes (In re STN Enters.)*, 779 F.2d 901, 904 (2d Cir. 1985) (discusses a trustee's power in context of Chapter 7 and Chapter 11); see also *Smart World Techs., LLC v. Juno Online Servs., Inc. (In re Smart World Techs., LLC)*, 423 F.3d 166, 176 (2d Cir. 2005); *Commodore Int'l Ltd. v. Gould (In re Commodore Int'l Ltd.)*, 262 F.3d 96, 99-99 (2d Cir. 2001). This doctrine has been applied in the context of a case where an individual Chapter 7 debtor attempted to prosecute a landlord-tenant action against a third party. *Burton v. Creditor (In re Burton)*, judgment dated 02/23/1999, 98-cv-04992 (KMW), docket no. 17, *aff'd*, 205 F.3d 1321, 2000 WL 254045 (2d Cir. 2000) (unpublished opinion).

There is no question that, in theory, the Accounts were property of the estate during the period of the Bank's restraint and that, at that time, the Chapter 7 trustee had an interest in the property superior to that of the Debtor. On the other hand, there is no question that the Debtor could and did claim all of the money in the Accounts as exempt under the Bankruptcy Code and applicable New York law, which allows for an aggregate exemption of at least $5000 in personal property. 11 U.S.C. § 522(b); N.Y. Debtor & Creditor Law § 283 (1999). There was never any real uncertainty that the Chapter 7 trustee would consider the funds in the Accounts, totaling approximately $1,150, as

6

exempt and that he would abandon the property to the Debtor, an action the Chapter 7 trustee eventually undertook.  *In re Calvin*, 329 B.R. at 598.  But the Court need not proceed on the basis of probabilities.  Most tellingly, Bank of America itself treated the money as belonging to the Debtor and not the estate.  It eventually released the funds solely on the basis that the Judgment Creditor's restraint had been lifted, and it acted without any notice, at any time, to the Chapter 7 trustee.  The Bank's solicitude for the interests of the Chapter 7 trustee became manifest only after the litigation of this motion, as a defense to the imposition of liability for its policies.

As noted above, the Second Circuit Court of Appeals has made clear that a party seeking to pursue a cause of action belonging to a bankruptcy trustee can only do so with the court's permission.  Yet there is no question that permission can be granted *nunc pro tunc*.  *In re Am. Hobby Ctr., Inc.*, 223 B.R. 275, 281 (Bankr. S.D.N.Y. 1998); see also *Liberty Mut. Ins. Co. v. Official Unsecured Creditors' Comm. of Spaulding Composites Co. (In re Spaulding Composites Co., Inc.)*, 207 B.R. 899, 905 (9th Cir. BAP 1996); *Louisiana World Exposition, Inc. v. Fed. Ins. Co. (In re Louisiana World Exposition, Inc.)*, 832 F.2d 1391, 1398 (5th Cir. 1987).  The Court will grant the Debtor standing to bring this motion, *nunc pro tunc*, because (i) the funds were the Debtor's exempt property, a fact the Chapter 7 trustee has confirmed; and (ii) there is no unfairness to Bank of America, which always treated the funds in the Accounts as the Debtor's property.

**II.  The Bank's Action**

Turning to the substance of the underlying motion, Bank of America defends on the ground that, under CPLR 5222(b), the Restraining Notice had the effect of a

7

mandatory injunction, which required "exact and explicit obedience … however irregular or erroneous it may be." Bank of America's Mem. of Law, at 8, citing *Root v. Conkling*, 108 Misc. 234, 177 N.Y. Supp. 610 (1919); 67A New York Jur.2d, *Injunctions*, §§ 195, 202 (West 2000). Bank of America claims that as a consequence of the injunction, it was required to place and maintain an administrative freeze on the Accounts until it received a release from the Judgment Creditor or its attorney. Bank of America posits, therefore, that the Debtor has wrongfully charged it with violation of the automatic stay. Bank of America's position is flat wrong.

The Bankruptcy Code is federal law that preempts State law under the Supremacy Clause of the United States Constitution, Article VI clause 2. See *Hillsborough County v. Automated Med. Labs., Inc.*, 471 U.S. 707, 712 (1985); *Sprint Spectrum L.P. v. Mills*, 283 F.3d 404, 414-15 (2d Cir. 2002). As the Second Circuit said in *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 527 (2d Cir. 1994), "the stay is effective immediately upon the filing of the petition, … and any proceedings or actions described in section 362(a)(1) are void and without vitality if they occur after the automatic stay takes effect." (citations omitted). Upon the filing of the petition, the restraining notice became void and of no effect. See *48th St. Steakhouse, Inc. v. Rockefeller Group, Inc. (In re 48th St. Steakhouse, Inc.)*, 835 F.2d 427, 431 (2d Cir. 1987), *cert. denied*, 485 U.S. 1035 (1988). As of the Petition Date, Bank of America had no legal obligation to abide by it.[3]

It is recognized that banks can place temporary administrative holds on property to protect themselves against liability or loss. See *Strumpf*, 516 U.S. at 21, which held

---

[3] It is emphasized that this case only deals with a restraining notice, which does not operate as a lien or encumbrance on property. CPLR § 5222. Unlike a restraining notice, a lien would provide a creditor with a security interest and different rights that would have to be considered prior to a bank turning over funds to a debtor.

8

that a brief administrative hold on a bank account to protect the bank's setoff rights did not violate the automatic stay. Nothing in this opinion implies that the Bank would not have been within its rights to place a *brief* restraint on the Debtor's Accounts to maintain the status quo, giving notice to the Chapter 7 trustee and to the Judgment Creditor that the funds would be released promptly to the Debtor if they did not demonstrate some reason why this should not be done. As the Supreme Court has made clear, however, a bank may place an administrative hold on an account only temporarily and must seek relief from the stay shortly thereafter if it does not unfreeze the account. *Strumpf*, 516 U.S. at 19. In *LNC Invs., Inc. v. First Fid. Bank*, 2000 WL 1072460 (S.D.N.Y. Aug. 3, 2000), the court held that the Supreme Court's rationale in *Strumpf* was clear, and that, although a bank may withhold return of a deposit temporarily, it "must move as quickly as possible in the bankruptcy court for more permanent relief." *Id*. at *6; see also *Eastern Airlines, Inc. v. Chem. Banks, Inc.*, 1997 WL 282264, at *1 (S.D.N.Y. May 28, 1997).

It is assumed that, under *Strumpf*, Bank of America would not have violated the automatic stay of the Bankruptcy Code by placing a brief administrative freeze on the Debtor's Accounts. Nevertheless, it violated the automatic stay when it imposed a freeze and did nothing further, placing the party with the least interest in a quick resolution, the Judgment Creditor, in the position of determining how quickly the property would be released.

The inadequacy of Bank of America's policy is highlighted when compared to the policy of Wells Fargo Bank, the sufficiency of which was recently examined by two courts, with different results. See *Calvin*, 329 B.R. at 605-06; *Jimenez*, 335 B.R. at 459-62. It was Wells Fargo's policy to place an administrative freeze on any account of a

9

newly-filed Chapter 7 debtor with a balance exceeding $5,000. The bank did *not* restrain accounts below $5,000 because it believed that any smaller balance would be exempt and of no value or interest to a Chapter 7 trustee. To avoid liability to a Chapter 7 trustee, for accounts with more than $5,000, the bank immediately notified the Chapter 7 trustee of the administrative freeze and asked for directions as to the disposition of the funds. *Calvin*, 329 B.R. at 594.

The Bankruptcy Court for the Southern District of Texas in *Calvin* found Wells Fargo's policy to be adequate and reasonable under the Supreme Court's *Strumpf* decision and that the Bank did not violate the automatic stay. 328 B.R. at 603. By contrast, the Bankruptcy Court for the District of New Mexico in *Jimenez* found the bank's actions pursuant to the same policy to violate the automatic stay, based on a different interpretation of *Strumpf* and the interplay of §§ 542 and 362(a)(3) of the Bankruptcy Code. 335 B.R. at 458.

It is not necessary, in this case, to choose between the *Calvin* and *Jimenez* decisions. Bank of America's non-policy, which puts the onus entirely on the debtor and permits a bank to freeze an account indefinitely and then do nothing, violates any reading of *Strumpf*.

A further indication of the unreasonable nature of Bank of America's practice is that its administrative freeze is apparently imposed on both pre-and post-petition deposits in a bank account. The Debtor originally complained that Bank of America had frozen $1,100 in her Account, and she implied that that amount had been deposited in her Account post-petition. The distinction is important because post-petition earnings of an individual in a Chapter 7 case are property of the debtor, not property of the estate. 11

10

U.S.C. § 541(a)(6). In this case, Debtor's counsel clarified the facts at oral argument by acknowledging that the $1,100 was deposited pre-petition and became, for a brief period, estate property. But the Bank's failure to distinguish between pre- and post-petition deposits makes its administrative freeze more unreasonable. Employers today commonly deposit wages and salaries directly into their employees' bank accounts. A debtor's pre- and post-petition funds both get swept up in Bank of America's administrative freeze, even though a Chapter 7 trustee would have no claim to a post-petition deposit. At oral argument, Bank of America suggested that a debtor should inform his or her employer of the restraint and request that the employer cease paying wages by "direct deposit." This would be no solution in light of the time it would take an employer to implement a change in its payroll practices. The existence of this further problem underscores the unreasonable nature of Bank of America's administrative freeze on a debtor's bank accounts. See *In re Schafer*, 315 B.R. 765 (Bankr. D. Colo. 2004) (credit union violated stay by six-week administrative freeze on debtor's account, during which funds were deposited into account).

Nothing herein should be construed to indicate that a judgment creditor may not violate the automatic stay by failing to respond to a demand that a restraint on a checking account be removed. See *In re Henry*, 328 B.R. 664 (E.D.N.Y. 2005). However, a bank with custody or control over a Chapter 7 debtor's bank account cannot avoid its responsibilities. Bank of America violated the automatic stay by freezing the Debtor's Accounts and doing nothing more than to put the responsibility on a third party.

### III. Damages

The Court rejects the Bank's argument that this motion became "moot" because the funds in the Accounts have been released to the Debtor. Section 362(h) of the Bankruptcy Code is applicable in this case and provides that "[a]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."[4] Once a court finds a stay violation to be willful, § 362(h) requires an award of damages, if there are any. See *In re Henry*, 328 B.R. at 668; *In re Schaefer*, 315 B.R. at 775; *In re Mullarkey*, 81 B.R. 280, 284 (Bankr.D.N.J.1987); *Tel-A-Communications Consultants v. Auto-Use (In re Tel-A-Communications Consultants, Inc.)*, 50 B.R. 250 (Bankr. D. Conn. 1985). In order for a violation to be willful, there need be no proof of an intent to violate the stay, but knowledge of the stay and action in violation of its requirements are sufficient. *Crysen/Montenay Energy Co. v. Esselen Assoc., Inc. (In re Crysen/Montenay Energy Co.)*, 902 F.2d 1098, (2d Cir. 1990); *Fleet Mortgage Group, Inc. v. Kaneb*, 196 F.3d 265, 269 (1st Cir. 1999); *Lansdale Family Rests., Inc. v. Weis Food Serv. (In re Lansdale Family Rests., Inc.)*, 977 F.2d 826, 829 (3d Cir. 1992).

The Debtor is seeking actual damages in the amount of $500, an award of punitive damages in an unspecified amount, and attorney's fees in the amount of $2500. As for actual damages, the Debtor does not provide sufficient evidence that she suffered $500 in losses. She claims she had to pay fees for late payment of her rent and telephone bill, but it is unclear whether the $1,100 in her Accounts would have been sufficient to

---

[4] Section 362(h) was amended by the 2005 Amendments to the Bankruptcy Code but applies in this case in its pre-amendment form.

12

pay both of these bills.  Bank of America acknowledges that it charged the Debtor a standard fee prior to the bankruptcy filing when it "bounced" one or more checks against the restrained Accounts, but the record does not demonstrate that this overdraft fee was charged after the Petition Date.  Before the Petition Date, the Restraining Notice was apparently valid, and the Debtor cannot complain about these fees.  A recent decision of the Ninth Circuit speaks of "an emerging consensus recognizing the availability of damages for emotional distress that results specifically from a willful violation of the automatic stay."  See *Dawson v. Washington Mut. Bank, F.A. (In re Dawson)*, 390 F.3d 1139, 1147 (9th Cir. 2004), and cases cited.  Assuming *arguendo* that such damages can be claimed, the Debtor's motion papers fail to make out a case therefor.  See *In re Robinson*, 228 B.R. 75, 84-85 (Bankr. E.D.N.Y. 1998).

    The Court must accordingly set the matter down for a further hearing on the issue of actual damages.  Since there is no indication Bank of America acted maliciously or in bad faith, the Court will not award punitive damages.  See *In re Klein*, 246 B.R. 542, 545 (Bankr. D.N.J. 1998); *Restatement (Second) of Torts* § 908 (1979).  Debtor's counsel may file a separate application for attorney's fees, attaching appropriate time records.

    The Debtor shall settle an appropriate order on five days' notice.

Dated: New York, New York
       March 31, 2006

                              */s/ Allan L. Gropper*
                              UNITED STATES BANKRUPTCY JUDGE